1 | Law Offices of Ronald Richards & Associates, APC
2 | Ronald Richards, Esq.  (SBN 176246)
  | P.O. Box 11480
3 | Beverly Hills, CA  90213
  | 310-556-1001 Office
4 | 310-277-3325 Fax
  | Email: ron@ronaldrichards.com
5 |
6 | Counsel for Secured Creditor,
  | D-Day Capital, LLC
7 |
8 |
9 |
10 | **UNITED STATES BANKRUPTCY COURT**
11 | **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:14-BK-15071-ES |
| LESLIE B. RAND-LUBY, , | Chapter 11 |
| Debtor. | **D-DAY CAPITAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, FOR APPOINTMENT OF EXAMINER;** |
| | **REQUEST FOR JUDICIAL NOTICE;** |
| | **DECLARATION OF RONAD RICHARDS;** |
| | **DECLARATION OF CRAIG LIPSEY** |
| | **[Notice of Motion and Motion filed Concurrently Herewith]** |
| | Date: December 4, 2014<br>Time: 10:30 a.m.<br>Ctrm: 5A<br>Ronald Reagan Federal Building<br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

1

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

## I.

## INTRODUCTION

Secured creditor D-Day Capital, LLC ("D-Day") hereby files this Memorandum of Points and Authorities in support of its motion for appointment of a Chapter 11 Trustee, or in the alternative, for appointment of an examiner ("Motion"), for the estate ("Estate") of Leslie B. Rand-Luby ("Debtor"). As discussed below, Debtor has valued her below-defined Residence at $2,800,000 in her Schedules, with scheduled encumbrances (two trust deeds in favor of banks) totaling approximately $2,525,000. Debtor refuses to sell the Residence for a pending all-cash offer of $3.1 million ("Offer") (*see* attached Richards Declaration), even though acceptance of the Offer would result in the Estate receiving approximately $500,000, net of full payment to the two bank trust deed holders, and net of Debtor's $75,000 homestead exemption (albeit subject to D-Day's abstract of judgment against the Residence, if the abstract is not deemed preferential).[1] Furthermore, the attached appraisal ("Appraisal") reflects that the Residence is worth $3.4 million, which is $600,000 more than Debtor's scheduled valuation. *See* attached Declaration of Craig Lipsey, the appraiser.

Debtor cannot have it both ways. If Debtor's scheduled $2.8 million valuation of the Residence is credible (which D-Day disputes), then Debtor's fiduciary duties as debtor-in-possession require her to sell the Residence for $3.1 million (subject to overbids, if Debtor wishes), as such a sale would result in a substantial windfall to the Estate. In addition, whether or not Debtor sells the Residence, she must increase its scheduled value in light of the attached Appraisal, which reflects a value of $3.4 million.

---

[1] Debtor's Schedule "D" also reflect a secured claim for property taxes in the amount of $21,777.80.

The proper valuation of the Residence is pivotal to a determination as to whether this is a solvent Estate, and thus whether D-Day's liens are preferential (although D-Day reserves the right to assert defenses other than Debtor's solvency).  Furthermore, if Debtor refuses to sell the Residence, a proper, higher scheduled valuation of the Residence would call into question whether Debtor can retain the Residence and the equity therein under a Chapter 11 plan.  The absolute priority rule --  if applicable to an individual Chapter 11 debtor -- would preclude Debtor from retaining the Residence unless all non-consenting creditors are paid in full under a plan.  In addition, an accurate scheduled valuation of the Residence is necessary for determining whether a Chapter 11 plan would be in the best interests of creditors – e.g., whether creditors would receive as much in a Chapter 11 plan as they would in a hypothetical Chapter 7 liquidation, where the Estate would sell the Residence and realize the equity therein.

Debtor's unreasonably low schedule value for the Residence, and her failure to accept the Offer, demonstrates that she is not being honest, and that she is not acting as a responsible fiduciary for the Estate, or in the best interests of creditors and the Estate.  A fully empowered, neutral and independent Chapter 11 Trustee is thus needed to without limitation: value the Residence; determine whether the Estate should accept the Offer, or whether the Estate should make a counteroffer; and file amended Schedules reflecting the higher, proper value for the Residence.  However, D-Day has no objection if the Court wishes to limit the Trustee's role to the tasks specifically set forth above, or alternatively, if the Court appoints an Examiner in lieu of a Trustee.

Furthermore, D-Day requests that the Trustee or Examiner first seek payment of professional fees and expenses from the Estate, as administrative claims.  However, if Estate funds are ultimately not available for such payment, D-Day hereby agrees to pay such fees and expenses, up to $15,000.

## II.

## **BACKGROUND**

Debtor filed her Chapter 11 petition on August 19, 2014 ("Petition Date").

Debtor represents that she practices medicine on a full-time basis with Kaiser Permanente, and that her income from her medical practice is the primary source of income for her Estate. *See* Debtor's Chapter 11 Status Report filed October 10, 2014 (Doc. #21), at p.1.

Debtor represents that she holds a 100% interest in her personal residence located at 218 Emerald Bay, Laguna Beach, California ("Residence"). The Residence is a three-story home in the oceanfront, guard-gated community known as Emerald Bay. The Residence is encumbered by first and second deeds of trust in favor of Chase Bank and Wells Fargo Bank, respectively. *Id.* Debtor represents that the Residence is encumbered by two bank liens totaling $2,523,214, and a secured tax claim of $21,777.80.[2] Debtor values the Residence at $2.8 million. Debtor has scheduled a $75,000 homestead exemption in the Residence. *See* Debtor's Statements and Schedules, which are an exhibit to the attached Request for Judicial Notice ("RFJN").

D-Day's claim against the Estate in the amount of $384,147.39 ("Claim") is evidenced by D-Day's Proof of Claim filed August 20, 2014 ("Proof of Claim"), which is attached as an exhibit to the RFJN.[3] D-Day asserts that almost all of the Claim is fully secured by without limitation, a pre-petition abstract of judgment against the Residence ("Abstract of Judgment"), and by an execution lien against $170,000 in funds that were liquidated from Debtor's account at Merrill Lynch, and which are now held by D-Day in a segregated interest-bearing account pursuant to a stipulated agreement that the funds shall not be disbursed from the trust account without Court order. The Abstract of

---

[2] Although Debtor schedules the total encumbrances against the Residence at $2,925,000, that apparently includes D-Day's disputed secured claim.

[3] The Claim arose from a deficiency judgment.

4

Judgment is attached to the Proof of Claim. The Proof of Claim reflects that the Claim is fully secured except for $10,580.85 in attorneys' fees and post-judgment interest that accrued after the liens arose, but before the Petition Date. *See* Proof of Claim attached to RFJN, at p.4.

There is a dispute as to whether D-Day's liens are voidable preferences because they arose within 90 days of the Petition Date. D-Day asserts that the liens are valid and non-preferential, including without limitation on the grounds that on the Petition Date and when the liens arose prior thereto, Debtor (according to D-Day) was solvent, such that in a preference action, Debtor could not satisfy her burden of proving solvency under Sec. 547(b)(3), or that the liens improved D-Day's position under Sec. 547(b)(5).[4]

The outcome of the instant Motion does not hinge on whether or not D-Day's liens are preferential. Either way, the Court should appoint a Trustee or Examiner. However, the outcome of the instant Motion may impact a potential preference action. If a Chapter 11 Trustee were to amend Debtor's Schedules to increase the scheduled value of the Residence from its currently scheduled valuation of $2.8M, to the $3.4M that it is really worth, and if certain below-described unsecured claims that Debtor has scheduled as disputed were disallowed due to either lack of filed claims by the December 19, 2014 bar date, or due to filed claims that are the subject of successful claim objections, Debtor would have a solvent Estate. With a solvent Estate, Debtor would be unable to prevail on a preference action under Secs. 547(b)(3) or (b)(5).

**III.**

**ARGUMENT**

Section 1104(a)(1) provides, in pertinent part, that at any time during a bankruptcy case, before confirmation of a plan, and upon request of a party in interest, "the court shall order the appointment of a trustee:

(1)    for cause, including fraud, dishonesty, incompetence or gross

---

[4] Sectional references refer to Title 11 U.S.C., unless otherwise noted.

5

1  mismanagement . . . either before or after the commencement of the
2  case, or similar cause . . ." [or]
3  (2)  if such appointment is in the interests of creditors, any equity security
4  holders, and other interests of the estate . . .
5  11 U.S.C. Sec. 1104(a)(1), (2).

Courts have repeatedly stated that a showing of a debtor's fraud, dishonesty, incompetence or gross mismanagement warrants the appointment of a trustee. *See In re Bibo*, 76 F.3d 256 (9th Cir. 1996), which affirmed the appointment of a Chapter 11 trustee *sua sponte*. Nonetheless, "cause" for the appointment of a trustee under Section 1104(a)(1) is not solely dependent upon a showing of the debtor's fraud, dishonesty, gross mismanagement or incompetence. It is determined on a case-by-case basis and is fact- sensitive. In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989).

Moreover, a Chapter 11 trustee can be appointed where there is no fraud or dishonesty, if such appointment is in the best interests of creditors and equity. *See, e.g. Matter of Anchorage Boat Sales, Inc.* 4 B.R. 635, 644 (Bankr. E.D. N.Y. 1980) ("under subsection (a) (2), the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a trustee would be in the interests of creditors, equity security holders, and other interests of the estate.") For instance, in the case of *In re BLX Group, Inc.* 419 B.R. 457 (Bankr. D. Montana 2009), the court appointed a trustee under subsection (a)(2) (as being in the best interest of creditors and the estate) to administer, and to potentially sell, certain real property, rather than to allow the debtor to sell it at what the court characterized as a "fire sale" price to the first mortgagee. The court held that it was questionable that the debtor's president/ director – who lived at the property -- would fulfill his fiduciary responsibilities if he was allowed to control the property and the potential disposition thereof. *BLX Group*, 419 B.R. at 472.

Courts have also appointed Chapter 11 trustees with limited powers, where it was determined that appointing a trustee to take over all of the debtor-in-possession's rights and obligations was deemed too broad a remedy. *See In re Nartron Corp.*, 330 B.R. 573 (Bankr. W.D. Mich. 2005); *In re Intercat, Inc.*, 247 B.R. 911 (Bankr. S.D. Ga. 2000); *In re North American Comm., Inc.*, 138 B.R. 175 (Bankr. W.D. Pa. 1992); *and In re Madison Management Group, Inc.*, 137 B.R. 275 (Bankr. N.D. Ill. 1992).

So too, courts have appointed examiners, after notice and a hearing, "to conduct an investigation of the debtor as is appropriate," if, under Sec. 1104(c)(1), "such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." *Sec. 1104(c)(1).* For instance, in the case of *In re World Industrial Center, Ltd.* 992 F.2d 1220 (9th Cir. 1993) (unpub'd), the bankruptcy court appointed an examiner to address issues relating to the debtor's real property. Subsequently, the bankruptcy court authorized the examiner to sell the realty. Indeed, the appointment of the examiner benefitted creditors in that it caused the debtor to start to fulfill its responsibilities as debtor-in-possession. "The Examiner's efforts apparently motivated Debtor to take control of the case." *Id.*[5]

Here, Debtor is not acting as an honest, responsible fiduciary by scheduling the value of the Residence at $2.8M when it is really worth $3.4 million (as reflected in the attached Appraisal referenced in the Lipsey Declaration), or by refusing to accept an all-cash offer to sell the Residence for $3.1 million, which exceeds Debtor's scheduled valuation by $300,000. *See* Richards Declaration. Thus there is cause, and it is in the best interests of creditors and the Estate, for the Court to appoint a fully empowered Chapter 11 Trustee, or in the alternative, to appoint a Chapter 11 trustee or an examiner with limited powers, to: (1) value the Residence and determine whether and on what terms the Residence should be sold, including evaluating the Offer, and accepting it

---

[5] The issue before the Ninth Circuit on appeal related to the examiner's fee application, and is not germane here.

(perhaps subject to overbid) and moving for approval of such sale under Sec. 363(b) if the Trustee or Examiner deems a sale to be in the best interests of creditors and the Estate, or else making a counteroffer; and (b) amending Debtor's Schedules to reflect the proper value of the Residence, based on the Appraisal and/or such other evidence of value that the Trustee determines reflects the Residence's value. [6]

Absent such relief, Debtor will continue to undervalue the Residence in the Schedules a $2.8 million, while simultaneously refusing to sell the property pursuant to the all-cash, $3.1 million offer, even though if the $2.8 million scheduled value were accurate (which it is not), the Estate would generate a significant windfall of approximately $500,000 from such a sale (net of the scheduled bank liens and Debtor's $75,000 schedule homestead exemption). [7]

Furthermore, the Trustee or Examiner would amend the Schedules to reflect a proper valuation for the Residence, which could be $3.4 million if the Court were to adopt the valuation in the Appraisal submitted by D-Day. A valuation of the Residence at $3.4 million, as opposed to the current scheduled value of $2.8 million, would increase the value of Debtor's scheduled assets by $600,000, to $5,436,611.76. *See* Amended Schedules attached to the RFJN.

Moreover, although Debtor's current scheduled liabilities total $11,017,733.70, said liabilities include six $1 million disputed scheduled claims against Debtor, by family members of the Estate of John Greg Colvin ("Scheduled Colvin Claim(s)"). [8] The Scheduled Colvin Claims are of questionable validity, as they apparently arise from decedent Mr. Colvin's death from a vehicle driven not by Debtor, but by Debtor's son.

---

[6] The Examiner's powers could be limited to making recommendations to the Court, if the Court wishes to so limit the Examiner's authority.

[7] Even if D-Day's recordation of an abstract of judgment against the Residence with 90 days of the Petition Date is not a preference, the sale would nonetheless benefit the Estate, because it would reduce D-Day's secured claim by approximately $100,000.

[8] Debtor's initial Schedule "F" reflects only one such claim, for $1 million. However, Debtor's Amended Schedule "F" filed October 25, 2014, adds five additional $1 million claims, by different relatives of the deceased.

In fact, D-Day's counsel Mr. Richards spoke with counsel for the Colvin personal injury claimants on November 10, 2014.  Claimants' counsel indicated that all of the Colvin claims will be settled within the Debtor's insurance policy, and that no claims would be made against Estate assets.  Moreover, none of the claims has any merit past the statutory liability of $15,000.00 as set forth in Vehicle Code section 17151.  *See* Richards Decl.  In California, a registered owner's liability is capped at $15,000 if someone using the car gets into a vehicle accident. *Id.*

The fact that this has been concealed from the Court and a false attempt to create a large liability that in reality is non-existent, is further evidence of the Debtor's attempts to mislead her creditors and the Court.

When the Scheduled Colvin Claims are all disallowed (as they should be pursuant to claims objections or by stipulation, if claims are filed prior to the December 19th bar date), Debtor's scheduled liabilities would be reduced to $5,017,733.70.  As that amount would be less than Debtor's scheduled assets of $5,436,611.76 (assuming a Residence value of $3.4 million), Debtor would be deemed solvent as of the Petition Date, such that D-Day's abstract of judgment and lien against Debtor's securities account would not be preferential.  Furthermore, a determination of solvency would benefit all creditors in connection with a Chapter 11 plan, under a "best interests of creditors analysis" (are unsecured creditors receiving at least as much in Chapter 11 as they would in a Chapter 7 liquidation) and/or if the absolute priority rule applies to individual debtors (as Debtor could not retain any of the equity in her solvent estate under a plan, without paying all creditors in full).  A responsible, disinterested fiduciary is thus needed to value the Residence in the Schedules, at its true value.[9]

---

[9] D-Day is aware that the applicability of the absolute priority rule to individual debtors is unresolved at present.

**IV.**

**CONCLUSION**

WHEREFORE, based on the foregoing, D-Day respectfully requests that the Court grant the Motion; that the Court order the appointment of a Trustee or Examiner, and that the Court grant such other and further relief as it deems just and proper.

DATED: November 12, 2014    LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC.


By: _____/s/ Ronald Richards_____
Ronald Richards
Counsel for Secured Creditor,
D-Day Capital, LLC

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

Secured creditor D-Day Capital, LLC ("D-Day") hereby files this Request for Judicial Notice in support of its motion for the appointment of a Chapter 11 Trustee or examiner, in the Chapter 11 case of Leslie B. Rand-Luby ("Debtor"), Case No 8:14-15071-ES , pursuant to without limitation, Rule 201 of the Federal Rules of Evidence:[10] [11]

**Exhibit "A" hereto**: Debtor's Statements and Schedules, filed September 2, 2014 (Doc. #13);

**Exhibit "B" hereto**: Debtor's Amended Statements and Schedules, filed October 25, 2014 (Doc. #27);

**Exhibit "C" hereto**: D-Day's Proof of Claim filed August 20, 2014; and

**Exhibit "D" hereto**: Debtor's Chapter 11 Status Conference Report, filed October 10, 2014 (Doc. #21).

DATED: November 12, 2014    LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC.

By: _____/s/ Ronald Richards_____
Ronald Richards
Counsel for Secured Creditor,
D-Day Capital, LLC

---

[10] All exhibits referenced herein are true and correct copies of that which they are purported to be, and are fully incorporated herein by reference.

[11] Each exhibit is from the above-captioned bankruptcy case unless otherwise noted.

11

## DECLARATION OF RONALD RICHARDS

I, Ronald Richards, declare as follows. I have personal knowledge of the following, and if called as a witness, I could and would competently testify thereto.

1. I am a member of the California Bar. I am the Manager of secured creditor D-Day Capital, LLC ("D-Day"), and am custodian of its books and records. This declaration is filed in support of D-Day's motion for the appointment of a Chapter 11 Trustee or Examiner, for the estate ("Estate") of Leslie B-Rand-Luby ("Debtor"). Each exhibit referenced herein is a true and correct copy of that which it is purported to be, and is fully incorporated herein by reference.

2. Attached hereto as **Exhibit "E"** is a copy of an email that I sent to Debtor's counsel J. Scott Williams on October 26, 2014. D-Day has a buyer ready, willing and able to pay Debtor $3.1 million, all-cash, to purchase the Debtor's residence at 218 Emerald Bay, Laguna Beach, California 92651 ("Residence"), subject to Court approval of the sale pursuant to 11 U.S.C. Sec. 363(b). The buyer will agree to overbids if Debtor so requires.

3. Attached hereto as **Exhibit "F"** is an appraisal for the Residence, which the appraisal service prepared for my law firm. The Appraisal values the Residence at $3.4 million as of September 12, 2014, which was 24 days after Debtor's August 19, 2014 petition date.

4. On November 10, 2014, I spoke with Dalton Phillips, Esq., counsel for the Colvin family members who hold scheduled and/or filed claims against the Estate, in connection with a wrongful death claim arising from an accident involving a vehicle driven by Debtor's son. Claimants' counsel indicated that all of the Colvin claims will be settled within the Debtor's insurance policy, and that no claims would be made against Estate assets. Moreover, none of the claims has any merit in excess of the statutory liability of $15,000.00 as set forth in Vehicle Code section 17151. In California, a registered

owner's liability is capped at $15,000 if someone using the car gets into a vehicle accident.

I declare, on November 12, 2014, at Los Angeles, California, that the foregoing is true and correct under penalty of perjury under the laws of the United States of America.

           */s/ Ronald Richards*
           Ronald Richards

## DECLARATION OF CRAIG LIPSEY

I, Craig Lipsey, declare as follows. I have personal knowledge of the following, and if called as a witness, I could and would competently testify thereto.

1. I am a California Certified Residential Real Estate Appraiser, and am principal of Lipsey Appraisal Service ("LAS"). .

2. LAS was retained by Law Offices of Ronald Richards, A.P.C., to appraise the real property with improvements thereon, located at 218 Emerald Bay, Laguna Beach, California 92651 ("Residence"). Attached hereto as **Exhibit "F"** is a true and correct copy of LAS's appraisal for the Residence, with a forwarding letter to Mr. Richards dated September 15, 2014 (collectively, "Appraisal"). The Appraisal reflects a value for the Residence of $3.4 million, as of September 12, 2014 ("Valuation Date").

3. I understand that Leslie B. Rand-Luby filed her Chapter 11 bankruptcy petition on August 19, 2014 ("Petition Date"). I believe that the Residence was worth $3.4 million as of the Petition Date. The Valuation Date was only 24 days after the Petition Date. I do not believe that the housing market or any other factors changed in any meaningful or material way between the Petition Date and the Valuation Date, that would have changed the value of the Residence during this period. Thus the value of the Residence was $3.4 million on both the Petition Date and the Valuation Date.

I declare, on November 12, 2014, at Los Angeles, California, that the foregoing is true and correct under penalty of perjury under the laws of the United States of America.

_____
Craig Lipsey

STATE OF CALIFORNIA )
) ss:
COUNTY OF LOS ANGELES )

My business address is: 424 S. Beverly Drive, Beverly Hills, CA 90212. The documents titled **D-DAY CAPITAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, FOR APPOINTMENT OF EXAMINER; REQUEST FOR JUDICIAL NOTICE; DECL. OF RONALD RICHARDS; DECLARATION OF CRAIG LIPSEY** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 12, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Greg P Campbell    ecfcacb@piteduncan.com, gc@ecf.inforuptcy.com
- Elizabeth A Lossing    elizabeth.lossing@usdoj.gov
- Howard N Madris    hmadris@madrislaw.com
- Ronald N Richards    ron@ronaldrichards.com, nick@ronaldrichards.com
- Ramesh Singh    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- J Scott Williams    jwilliams@williamsbkfirm.com
- Kristin A Zilberstein    bknotice@mccarthyholthus.com, kzilberstein@mccarthyholthus.com

**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**
On November 12, 2014, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Hon. Erithe Smith
Suite 5040
Ronald Reagan Federal Building
411 West Fourth Street
Santa Ana, CA 92701-4593

Office of the U.S. Trustee
411 West Fourth Street
Suite 9041
Santa Ana, CA 92701

Leslie B. Rand-Luby
218 Emerald Bay
Laguna Beach, CA 92651

At Beverly Hills, California, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Dated: November 12, 2014

*/s/ Esty Aviksis*
Esty Aviksis